No. 88-341

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

TAB SCOTT STEWART,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    John Keith, Great Falls, Montana

    For Respondent:

    Hon. Mike Greely, Attorney General, Helena, Montana
    Joe R. Roberts, Asst. Atty. General, Helena
    Patrick L. Paul, County Attorney, Great Falls, Montana
    Brant S. Light, Deputy County Attorney, Great Falls

---

Submitted on Briefs:  Dec. 2, 1988

Decided:  December 28, 1988

Filed:

_Ethel M. Harrison_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant, Tab Scott Stewart, appeals his conviction of burglary and aggravated burglary, both felonies, and misdemeanor theft, in the Eighth Judicial District, Cascade County, Montana. Appellant's only claim on appeal is that he was denied effective assistance of counsel. We affirm the conviction.

On September 11, 1987, Pat Maag reported a burglary at his home in Great Falls, Montana. Mr. Maag occupied the basement apartment in a large, two story building. Various miscellaneous items were taken, including a gold-tone Timex watch. Mr. Maag did not see anyone enter his apartment. However, Brian Collins, a neighbor, saw the appellant in the alley behind Mr. Maag's residence on the previous night. Prior to the burglary, the appellant had moved from the apartment complex because he had problems with the landlord.

Appellant was also charged in a second, unrelated crime. On October 1, 1987, at approximately 2:30 a.m., Mary Skinner was asleep at home with her six-year-old daughter, Meaghan. She was awakened by someone in her closet. Mrs. Skinner spoke to the person, assuming the person was one of her other children. Startled by her question, the intruder moved toward the bed and grabbed Mrs. Skinner around the throat and began to choke her and strike her face. Mrs. Skinner screamed for her other daughter, Maile, who was asleep in the next room. Meaghan awoke and attempted to flee the room. The defendant grabbed Meaghan around the throat and threw her onto the bed. Meanwhile, Maile telephoned the police from the kitchen. There she confronted the assailant, and told him she had contacted the police. Mrs. Skinner chased the assailant into the living room area where she hit

him with a waterbed railing. Finally, the assailant fled the home.

When the police arrived, Mrs. Skinner gave them a description of the assailant. She stated he had short wavy blond hair and wore a gray, fleece-like jacket and blue jeans. Mrs. Skinner thought the assailant seemed familiar to her, but she was unable to identify him. On October 5, 1987, Maile gave Mrs. Skinner a picture of a friend who fit the description of the assailant. The person in the photo was the appellant, Tab Stewart.

Appellant was arrested and charged on November 4, 1987. After a jury trial on February 24, 1988, the appellant was found guilty of all charges. Appellant claims he was denied effective assistance of counsel. We disagree.

Much of this appeal focuses on the testimony of Keith Zigan, the appellant's roommate and the State's key witness. Initially, Mr. Zigan told the police that he had been with the appellant all evening on the night of the Skinner burglary, substantiating the appellant's alibi defense. However, Zigan's testimony at trial contradicted his earlier statements. Zigan testified that although he and the appellant had been together for a few hours on the night of the burglary, they parted company around 9:00 p.m. He also stated that on the morning of October 1, 1987, he saw fresh scratches on the appellant's chest. Zigan testified the appellant told him about the Skinner burglary, and admitted he hit a woman and he may have also hit a child. Zigan also identified a gray jacket as belonging to the appellant which was similar to the jacket Mrs. Skinner described as being worn by her assailant.

Additionally, Zigan aided the police in the recovery of the stolen watch. He testified that he saw the appellant go behind their residence and throw a gold colored watch into

3

the field. The watch was later recovered by Great Falls police officers and identified by Mr. Maag as belonging to him.

Although appellant alleges a number of errors by trial counsel, only one such allegation merits this Court's discussion. Appellant contends his counsel's performance was deficient because he failed to adequately present evidence to impeach the testimony of Keith Zigan. Zigan testified that, through the kitchen window of their daylight basement apartment, he saw the defendant throw a gold colored watch into a field. Appellant contends Zigan could not have seen the purported incident from that specific window, because stacked wood obstructed the view. Appellant claims counsel's failure to call additional witnesses or present photographs to impeach Zigan's testimony resulted in substantial prejudice. From our review of the record, we see no error.

Ineffective assistance of counsel requires specific acts or omissions which prejudice defendant's case and result in the denial of a fair trial. State v. Grant (Mont. 1985), 704 P.2d 1064, 1065, 42 St.Rep. 1248, 1250. This Court has long recognized and consistently followed the test adopted by the United States Supreme Court for determining when ineffective assistance of counsel has occurred:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. To show prejudice, a defendant must show that, but for counsel's unprofessional

errors, there was reasonable probability that the result of the proceeding would have been different. State v. Strandberg (Mont. 1986), 724 P.2d 710, 713, 43 St.Rep. 1591, 1594. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. State v. Robbins (Mont. 1985), 708 P.2d 227, 232, 42 St.Rep. 1440, 1444, citing Strickland, supra.

> It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the "identified acts or omissions" overcome the presumption that a counsel rendered reasonable professional assistance. Since "[t]here are countless ways to provide effective assistance in any given case," . . . unless consideration is given to counsel's overall performance, before and at trial, it will be "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . ." (citations omitted.)

State v. Leavens (Mont. 1986), 723 P.2d 236, 237, 43 St.Rep. 1431, 1433, citing Kimmelman v. Morrison (1986), 477 U.S. 365, 386, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305, 326, and Strickland, supra.

Appellant's allegation of Zigan's obstructed view was addressed extensively during trial. It was initially raised in counsel's opening statement and strongly reiterated during closing remarks as one of many inconsistencies in Zigan's testimony. More importantly, counsel sought to impeach Zigan's testimony through the use of a diagram of the apartment which illustrated how the wood pile obstructed Zigan's view of the field. It is notable that even the appellant testified that it is possible to see someone outside the window from inside the apartment.

Appellant's alleged error amounts to an attempt to second guess counsel's trial tactics and strategies. Where no prejudice is shown, we will not question counsel's professional deliberations. State v. Henricks (1983), 206 Mont. 469, 672 P.2d 20.

Defendant fails to point to any evidence to substantiate his allegation of ineffective assistance of counsel or prove his counsel's actions deprived him of a fair trial. We find no merit in the appellant's contentions.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices