No. 90-163

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

     Plaintiff and Respondent,

  -vs-

CURTIS ALAN PAULSON, Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Kenneth R. Olson argued; Attorney at Law, Great
Falls, Montana.

     For Respondent:

          Marc Racicot, Attorney General, Helena, Montana;
George Schunk argued, Assistant Attorney General,
Helena Montana; Patrick L. Paul, County Attorney,
Great Falls, Montana; Stephen E. Hagerman, Deputy
County Attorney, Great Falls, Montana.

FILED

SEP 13 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Filed:

Heard: March 6, 1991

Submitted: April 4, 1991

Decided: September 13, 1991

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, Curtis Alan Paulson, was convicted of the offense of criminal possession of dangerous drugs with the intent to sell, a felony pursuant to § 45-9-103, MCA, following a jury trial in the District Court for the Eighth Judicial District, Cascade County. Defendant appeals. We affirm.

The issues as restated are:

1. Must accomplice testimony as to other crimes, wrongs or acts be corroborated before it is admissible?

2. Should this Court adopt a sufficiency of the evidence standard of proof which must be met before evidence of other crimes, wrongs or acts is admissible?

3. Did the District Court err when it admitted testimony of other crimes, wrongs or acts of the defendant?

4. Was the defendant denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution?

5. Was the evidence sufficient to support a verdict of guilty on the charge of criminal possession of dangerous drugs with intent to sell?

6. Does the sentence imposed constitute an excessive sanction in violation of the defendant's rights under the Eighth Amendment to the United States Constitution and Art. II, § 22 of the Montana Constitution?

As background information, we summarize the evidence as submitted by the State. Where necessary, we will set forth

2

additional information. The defendant, Curtis Paulson, ran a marijuana importing and distribution business in Great Falls, Montana for a period of at least ten years. This evidence showed the following general pattern of operation. Paulson imported the marijuana from a grower in Hawaii. The marijuana was delivered by UPS to various addresses in Great Falls. Each package weighed from 15 to 40 pounds and consisted of compressed bales of marijuana. The smell of the marijuana was suppressed through the use of multiple layers of plastic wrapping, duct tape, and baking soda to avoid detection by drug-sniffing dogs at airports.

Paulson arranged to have the marijuana packages shipped to different addresses using incorrect first names for the recipients. Each recipient accepted the package from UPS and then marked the package "Return to Sender". The package was allowed to sit for a few days. This precaution was intended to create an alibi if law enforcement personnel traced the packages, obtained a search warrant, and seized the boxes. The recipient could claim the boxes did not belong to him because the name was incorrect and were waiting to be picked up by UPS. After the cautionary waiting period, Paulson either picked up the marijuana from the recipient or left the boxes with the recipient for storage until needed for sale. Paulson and the recipient broke up the marijuana as needed for sale, and weighed the marijuana and placed marketable quantities in plastic ziplock baggies.

In November, 1988, the Great Falls Police Department's drug investigation led to a confidential informant who made several

3

controlled buys of marijuana from Doug Smith at his home. A search of Doug Smith's home resulted in seizure of approximately four and one-half pounds of marijuana, a scale, cash, plastic baggies, and other paraphernalia typically used in sale operations. Doug Smith gave a detailed statement to the police and identified Curtis Paulson as his source of the marijuana. This information confirmed other sources that had over the past several years identified to authorities that Curtis Paulson was a major drug dealer in Great Falls.

The State Identification Bureau tested the items seized from Doug Smith's home and found Curtis Paulson's fingerprints on one of the bags of marijuana and on one of the baggies found with the scale. Paulson presented evidence to explain his fingerprints on the baggies found in Doug Smith's home through testimony of a witness who had observed Paulson and Doug Smith cleaning game birds in Doug Smith's back yard and placing the birds into baggies for freezing.

A search of Curtis Paulson's residence resulted in the seizure of 1,000-watt grow lamps, a hood, a timer, tubing, planters, a carbon dioxide dispenser, transformers, shipping boxes and labels, false picture identification cards, financial and banking records, and cash. No marijuana was found during the search.

I

Must accomplice testimony as to other crimes, wrongs or acts be corroborated before it is admissible?

Over objections of defense counsel, the State presented

4

testimony from two admitted Great Falls drug dealers that detailed Curtis Paulson's importation and distribution scheme in Great Falls spanning at least ten years. Jarl Garber and Dale Davidson both had previously received UPS shipments of marijuana from Hawaii for Paulson in a manner similar to that described by Doug Smith. The testimony indicated that Paulson only used a recipient two or three times and then arranged delivery to a different recipient. Both Garber and Davidson were previous recipients of marijuana shipments for Paulson. Neither Garber nor Davidson were involved in any manner in the drug shipments for which Paulson was charged.

Paulson argues that § 46-16-213, MCA, requires corroboration of Smith's accomplice testimony to convict Paulson and therefore the same standard should apply to the accomplice testimony of Garber and Davidson as to other crimes, wrongs or acts. Section 46-16-213, MCA, states:

> <u>A conviction</u> cannot be had on the testimony of one <u>responsible or legally accountable for the same offense</u>, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. (Emphasis supplied.)

Section 46-16-213, MCA, prohibits a conviction on the testimony of a person legally accountable for the same offense unless that testimony is corroborated by other evidence. Neither Garber nor Davidson were chargeable with the crimes for which Paulson was convicted. We conclude there is no basis for applying § 46-16-213, MCA, to the testimony of Garber and Paulson.

5

We hold that as to crimes, wrongs or acts other than those upon which the defendant is charged, accomplice testimony need not be corroborated before it is admissible.

## II

Should this Court adopt a sufficiency of the evidence standard of proof which must be met before evidence of other crimes, wrongs or acts is admissible?

Defendant also argues that this Court should adopt a rule that before admitting the testimony the District Court must determine that the sufficiency of the evidence would support a finding by a jury that the defendant committed the other crimes, wrongs or acts. Huddleston v. United States (1988), 485 U.S. 681. Huddleston addressed the issue of the rule or standard to be applied in federal courts in determining the admissibility of other crimes, wrongs or acts evidence under Rule 404(b), Fed.R.Evid.

In Montana, the Modified Just Rule determines the admissibility of other crimes, wrongs or acts under Rule 404(b), M.R.Evid. State v. Matt (Mont. 1991), ___ P.2d ___, ___, 48 St.Rep. 614, 616. Neither the old Just Rule under State v. Just (1979), 184 Mont. 262, 602 P.2d 957, nor the new Modified Just Rule in Matt incorporate a sufficiency of the evidence standard. While developing the Modified Just Rule in Matt, this Court considered imposing a standard of review in addition to the Modified Just Rule and concluded that the incorporation of Rules 404(b) and 403, M.R.Evid., into the Modified Just Rule was adequate protection against improper admissibility of Rule 404(b) evidence. This Court

concluded that a separate standard of review was neither necessary nor compatible with the Modified Just Rule. Upon reconsideration in this case we decline to impose such a standard of review to be used in addition to the Modified Just Rule in determining the admissibility of Rule 404(b) evidence.

## III

Did the District Court err when it admitted testimony of other crimes, wrongs or acts of the defendant?

The defendant objected to two aspects of other crimes evidence. The first was the testimony by Garber and Davidson with regard to the shipment of drugs. The second was the objection to the testimony of Detective Lockerby that the 1,000-watt grow lamps, hood, timer, tubing, planters, carbon dioxide dispenser, and transformers were also evidence of a marijuana operation and admissible as other crimes evidence. Defendant asserts the other crimes testimony was highly prejudicial and improperly admitted under the Just Rule. Just, 184 Mont. 262, 602 P.2d 957.

We will analyze the contentions on the part of the defendant under the Modified Just Rule as adopted in State v. Matt. The Modified Just Rule states:

(1) The other crimes, wrongs or acts must be similar.

(2) The other crimes, wrongs or acts must not be remote in time.

(3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

7

(4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Element (1) of the Modified Just Rule requires that the other crimes, wrongs or acts be similar. With regard to the testimony of Garber and Davidson, such evidence related to Paulson's involvement in the distribution and sale of marijuana. Such testimony described methods of shipping marijuana from Hawaii to the witnesses in Great Falls, in a manner directly comparable to the method used in connection with the charged crimes as testified to by Smith. We conclude that element (1) has been met so far as the Garber and Davidson testimony is concerned.

Defendant argues that the evidence of the possession of grow equipment is not similar to the charged offense. Detective Lockerby testified the equipment included 1,000-watt bulbs and transformers used to change voltage from 110 volts to about 400 volts as needed, because of the amount of energy required by the light; and that grow equipment of this type and size is circumstantial evidence of an operation consistent with the cultivation of marijuana with intent to sell. We point out that the evidence was admissible as a part of the corpus delicti of the charged offenses. With regard to element (1) of the Modified Just Rule, the method by which Paulson had the grow equipment shipped was similar to the method by which Paulson had the marijuana shipped from Hawaii. Detective Lockerby testified that the shipping label on the package used for the shipping of the grow

8

equipment was addressed to "Jim Garber," at a Great Falls address. He further testified that the person who lived at that address was "Jarel Garber." This allowed recipient Garber to retain the package for several days so that he could contend it was not addressed to him should police authorities investigate. We conclude that the admission of the grow equipment has met the requirements of element (1) of the Modified Just Rule.

Under element (2) of the Modified Just Rule, defendant argues that the testimony on the part of Garber and Davidson established offenses too remote in time. Garber testified he had received a marijuana shipment two and one-half years before trial. Davidson testified that the defendant had been shipping marijuana from Hawaii for at least ten years. The District Court concluded that the testimonies showed a continuous pattern of conduct by the defendant and were therefore admissible.

In State v. Tecca (1986), 220 Mont. 168, 172, 714 P.2d 136, 139, this Court quoted from State v. Doll (1985), 214 Mont. 390, 692 P.2d 473, stating:

> Whether evidence of prior crimes is too remote is directed to the discretion of the district court and is a matter that goes to the credibility of the evidence rather than its admissibility, unless the remoteness is so great that the proffered evidence has no value.
>
> We agree that an isolated incident from nine years ago is too remote; however, where there is a continuing pattern of similar conduct, the remoteness problem is alleviated. . . .

The testimony of Garber and Davidson demonstrated that the defendant's conduct had occurred in a consistent manner over a period of close to ten years. We affirm the conclusion of the

9

District Court that the Garber and Davidson testimony was not too remote in time under element (2) of the Modified Just Rule.

So far as the evidence on grow equipment shipment is concerned, this evidence clearly was not remote in time. It occurred during the course of the commission of the acts charged. We conclude that the grow equipment evidence was not too remote in time under element (2) of the Modified Just Rule.

The State introduced the testimony of Garber and Davidson for the purpose of showing a common scheme, plan or system. This is a permissible purpose under element (3) of the Modified Just Rule. Matt, 48 St.Rep. at 616. We conclude that the Garber and Davidson testimony tended to establish a plan and was properly admissible under element (3) of the Modified Just Rule.

With regard to the grow equipment evidence, we have previously pointed out that the method of shipment was directly comparable to the method of shipment used with regard to marijuana. In addition, the grow equipment of the type and size found at Paulson's residence is circumstantial evidence of an operation consistent with the cultivation of marijuana with intent to sell. We conclude that the grow equipment testimony was admissible under element (3) of the Modified Just Rule.

With regard to element (4) of the Modified Just Rule, the defendant argues that the probative value of the other crimes evidence was substantially outweighed by the unfair prejudice of its admission so the evidence should not have been admitted. We conclude that as to the testimony of Garber and Davidson, and the

evidence of the grow equipment, because the first three elements of the Modified Just Rule have been met, the probative value of the evidence has been established. See State v. Ramstad (1990), 243 Mont. 162, 168, 793 P.2d 802, 806. We must next determine if unfair prejudice under element (4) of the Modified Just Rule is sufficient to outweigh the established probative value. In Matt, by the adoption of the Modified Just Rule, we clarified the procedural protections that are required under that Rule to protect against unfair prejudice. These procedures include:

> (1) Evidence of other crimes, wrongs or acts may not be received unless there has been written notice to the defendant that such evidence is to be introduced. The notice to the defendant shall specify the evidence of other crimes, wrongs or acts to be admitted, and the specific Rule 404(b) purpose or purposes for which it is to be admitted.
>
> (2) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.
>
> (3) In its final charge, the court shall instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.

Matt, 48 St.Rep. at 616.

Defendant challenges the adequacy of the Just notices. The State served several Just notices. The initial Just notice generally stated that the State intended to introduce other crimes evidence to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Such notices do not meet the specificity required in a Modified Just

11

notice. See State v. Croteau (Mont. 1991), ___ P.2d ___, ___, 48 St.Rep. 484, 486-87.

However, subsequent Just notices did meet the requirements of the Modified Just Rule. Two of such subsequent notices qualified the general statement by pointing out that the State intended to present other crimes evidence to show:

> [A]dditional evidence of drug dealing which corroborates Doug Smith's testimony to-wit: showing a common pattern and scheme of Defendant to ship narcotics to individuals other than himself using a different first name for that individual; that the Defendant shipped drug paraphernalia to [name of witness] in the same manner as shipments of narcotics were made to other people, which ultimately would go to Defendant. (Emphasis supplied.)

Two other notices followed the general statement with:

> [T]he drug dealings of Curtis Paulson and his relationship with Doug Smith, who is the State's witness in this case, including prior shipments of marijuana sent to Smith and other information dealing with drugs between them. The specific actions are found in the statement of Doug Smith taken by Detectives Larry Renman and Bryan Lockerby on May 2, 1989, a copy of which has been supplied to defense counsel.

Those Just notices did adequately advise the defendant as to the matters to be included in the testimony of the other crimes witnesses. We conclude that the first procedural requirement under the Modified Just Rule was met in this case as to both the testimony of Garber and Davidson, and the evidence with regard to the shipment of grow equipment.

The District Court clearly satisfied the second procedural requirement of the Modified Just Rule which requires the trial court to explain to the jury the purposes of the evidence and to admonish the jury to weigh the evidence only for such purposes.

The required admonition was given to the jury by the District Court at all critical points and on four different occasions. We conclude that the second procedural requirement of the Modified Just Rule was met.

The third procedural requirement is that the court instruct the jury in unequivocal terms. Here, Instruction No. 16, given at the conclusion of the trial is identical to the instruction this Court has approved as meeting such third procedural requirement. Tecca, 220 Mont. at 174, 714 P.2d at 140. We conclude that the third procedural requirement of the Modified Just Rule was met. We conclude that the procedural protections contained in the three elements of the Modified Just Rule were met in this case.

This leaves for evaluation whether or not unfair prejudice to the defendant outweighed the established probative value as described in element (4) of the Modified Just Rule. 10 James Wm. Moore, Moore's Federal Practice § 403.10, contains an excellent description of the nature of the unfair prejudice which is required under element (4) of the Modified Just Rule:

> To guide courts in balancing the "probative value" and the "unfair prejudice" of evidence, the Committee states that the latter term means evidence which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Application of this thought and the ultimate determination of admissibility are matters left to the discretion of the trial court and will necessarily be decided on a case by case basis. However, by restricting the rule to evidence which will cause "unfair prejudice" the draftsmen meant to caution courts that mere prejudicial effect is not a sufficient reason to refuse admission. Probative evidence will frequently be prejudicial to a party, but that does not mean that it will cause the fact finder to ground a decision on an emotional basis. Thus, evidence which tends to horrify,

13

> evoke sympathy or increase a desire to punish due to a
> prior act of a party and whose probative value is slight
> may be properly excluded. (Emphasis added.) (Citations
> omitted.)

After our review of the cases cited in support of the foregoing quote from Moore's Federal Practice, we conclude that it is an appropriate definition of unfair prejudice. We therefore adopt the foregoing as the holding of this Court in defining unfair prejudice under element (4) of the Modified Just Rule.

In the present case, the testimony of Garber and Davidson, and the testimony with regard to the grow equipment was clearly prejudicial, but because it meets other aspects of the Modified Just Rule, that prejudice alone is not a sufficient reason to refuse admission. We conclude that the evidence is not of the type which would cause the jury to ground its decision on an emotional basis. The evidence is not of the type which tends to horrify, evoke sympathy or increase a desire to punish and whose probative value is slight. Here both aspects of the evidence are clearly significant to the issue of the commission by the defendant of the charged crimes. We therefore hold that the probative value of the Garber and Davidson testimony, and the evidence of the grow equipment, is not substantially outweighed by the danger of unfair prejudice or misleading of the jury under element (4) of the Modified Just Rule.

Considering the Modified Just Rule as a whole, we conclude that the four substantive elements of the Modified Just Rule, and the procedural elements of the Modified Just Rule, have been properly satisfied in this case. We hold that the testimony of

14

Garber and Davidson and the evidence as to the grow equipment was properly admitted by the District Court as evidence of other crimes, wrongs or acts under the Modified Just Rule.

IV

Was the defendant denied his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution?

Defendant presents the following examples for his argument that he was ineffectively represented at trial: failure to formulate a workable trial strategy, failure to present a fingerprint expert, failure to adequately interview witnesses before trial, failure to object to critical evidence, failure to properly instruct the jury, and failure to present an effective closing argument.

In State v. Kolberg (1990), 241 Mont. 105, 109, 785 P.2d 702, 704, we stated:

> Ineffective assistance of counsel requires specific acts or omissions which prejudice defendant's case and result in the denial of a fair trial . . . First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To show prejudice, a defendant must show that, but for counsel's unprofessional errors, there was reasonable probability that the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. (Citations omitted.)

In order for trial errors to rise to the level of ineffective assistance of counsel, those errors must stem from neglect or ignorance rather than from informed, professional deliberation.

15

State v. Morigeau (1982), 202 Mont. 36, 44, 656 P.2d 185, 189. This Court will not second-guess counsel's trial tactics and strategies and, where no prejudice is shown, counsel's professional deliberations will not be questioned. State v. Stewart (1988), 235 Mont. 239, 242, 767 P.2d 296, 298. The record contains no factual basis to support an argument that the alleged failures on the part of defendant's trial counsel stemmed from neglect or ignorance. Defendant fails to point to any evidence that proves his counsel's actions were anything other than trial tactics and strategies, or that his counsel's actions deprived him of a fair trial. We find no merit in defendant's contention that he was deprived of his right to effective assistance of counsel.

V

Was the evidence sufficient to support a verdict of guilty on the charge of criminal possession of dangerous drugs with intent to sell?

The defendant argues that his conviction for possession of dangerous drugs with intent to sell was not supported by sufficient evidence because the State failed to provide sufficient independent corroborating evidence to support the testimony of the accomplice, Doug Smith. In prior cases we have summarized the guidelines for testing the sufficiency of corroborating evidence:

> To be sufficient, corroborating evidence must show more than that a crime was in fact committed or the circumstances of its commission. It must raise more than a suspicion of the defendant's involvement in, or opportunity to commit, the crime charged. But corroborative evidence need not be sufficient, by itself, to support a defendant's conviction or even to make out a prima facia case against him. Corroborating evidence

16

> may be circumstantial and may come from the defendant and his witnesses . . .
>
> Corroborating testimony is viewed in a light most favorable to the State. The corroborating evidence need only tend to connect the defendant with the crime charged and need not extend to every fact to which the accomplice testifies. Thus, corroborating evidence is not insufficient merely because it is circumstantial, disputed, or possibly consistent with innocent conduct; it is the jury's duty to resolve such factual questions. (Cites Omitted.) [Emphasis added.]

State v. Kaczmarek (1990), 243 Mont. 456, 459-60, 795 P.2d 439, 441-42.

In the present case Doug Smith's testimony was corroborated by circumstantial evidence. Two of defendant's fingerprints were found on baggies found in Doug Smith's home that were used for packaging and marketing the marijuana. One of these baggies contained marijuana, the other baggie was found with other drug paraphernalia. Telephone records of the defendant's residence verified that six phones calls were made to the supplier in Hawaii in the two week period prior to one of the shipments of marijuana to Doug Smith's home.

UPS records verified Doug Smith's testimony as to the dates of shipments and use of incorrect first names on shipping labels. The UPS witness also testified that it takes exactly three business days to receive a shipment from Hawaii. One of the shipments to Doug Smith's home arrived exactly three business days following the sixth phone call made from defendant's residence to the supplier in Hawaii.

Doug Smith's testimony was also corroborated by the testimonies of Garber and Davidson. Both of these witnesses gave similar detailed accounts of the method used when they received

17

drug shipments from Hawaii for the defendant. Jarl Garber testified that he had also received a shipment of drug growing equipment for Paulson. Shipping labels found with the growing equipment at the residence of Paulson were addressed to "Jim" Garber, 1305 5th Avenue Northwest, Great Falls, Montana.

Corroborative evidence must clearly (1) be independent, (2) point toward the defendant's guilt, and (3) provide a legally sufficient connection between the defendant and the offense. Kaczmarek, 795 P.2d at 442. Here the evidence meets this three part test, thus corroborating Smith's testimony and tending to establish Paulson's guilt.

The proper standard of review for sufficiency of the evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Kaczmarek, 795 P.2d at 442. Having determined that Smith's testimony was sufficiently corroborated by the physical evidence and by the corroborating testimonies of Garber and Davidson, the essential elements of possession of dangerous drugs with intent to sell have been met. Clearly, a rational jury could have found the defendant guilty in this case. We hold that the evidence was sufficient to support a verdict of guilty on the charge of criminal possession of dangerous drugs with intent to sell.

VI

Does the sentence imposed constitute an excessive sanction in

18

violation of the defendant's rights under the Eighth Amendment to the United States Constitution and Art. II, § 22 of the Montana Constitution?

Defendant received a twenty year sentence with five years suspended. He will not be eligible for parole for five years. In addition he was assessed a $30,000.00 fine and had his hunting privileges suspended during the twenty year period.

Defendant's counsel prepared an affidavit containing computations based on sentencing statistics prepared by the Montana State Judicial Information Center outlining the sentences imposed in 1988 and 1989 for offenses of possession of dangerous drugs with intent to sell. Based on those statistics, defendant argues that his sentence is especially harsh for a first time offender and violates the United States and Montana Constitutions' prohibitions against imposition of excessive sanctions.

Section 45-9-103(3), MCA, sets forth the sentence guidelines for criminal possession with intent to sell. That provision states:

> A person convicted of criminal possession with intent to sell . . . shall be imprisoned in the state prison for a term of not more than 20 years or be fined an amount not to exceed $50,000, or both.

The District Court stated its reasons for defendant's sentence as follows:

> 1. Testimony during trial established that this was a sophisticated operation wherein the Defendant attempted to insulate his activities through the use of other people. Testimony also revealed that the Defendant has been involved in drug dealings for approximately twelve years.

19

2. The Defendant had a large income which was not explained to the Court's satisfaction. There was testimony at the Sentencing hearing that much of the Defendant's income had not been reported for tax purposes. There was further testimony that the Defendant was engaged in money laundering.

3. The Court considered the harm to society.

4. The Court considered the recommendation contained in the Pre-Sentence Report, but notes that the officer who prepared the report was not present during the trial and did not have the benefit of hearing all the testimony. Furthermore, the officer did not have the benefit of the testimony which the State presented during the sentencing hearing.

5. This court heard testimony from Det. Renman, that the total shipment containing some of the drugs introduced at trial had a wholesale value of approximately $27,000.00. The court is of the opinion that there should be no profit from the illegal sale of drugs. Furthermore, the Court feels that it is appropriate that those dealing in drugs ought to pay for some of the costs associated with the detection and prosecution of drug offenders and for these reasons fined the Defendant $30,000.00.

6. The Defendant is an admitted non-user of drugs, yet he was convicted of possession of dangerous drugs with intent to sell. The Defendant is not an addict dealing to supply his own habit. The Defendant's motive is simply money.

7. The Probation and Parole Officer recommended that the Defendant was not to hunt with a gun during the suspended portion of his sentence. This provision was made to comply with Federal Laws prohibiting a convicted felon from possessing a gun.

8. In declaring the Defendant ineligible for parole for the first five years of his sentence it was the Court's intention that the Defendant serve more than a token few months in the penitentiary. The facts and seriousness of this case have caused this Court to be concerned. The Defendant had a well planned operation which allowed him to escape the law for many years. Grow lights were found at the house of the Defendant. The State of Montana characterized the Defendant as a "major drug dealer". The Court cannot fix any mitigating factors other than this is the first time the Defendant has been caught and sentenced.

These reasons set forth by the District Court are well-reasoned and supported by the evidence. The sentence itself is within the guidelines set forth in § 45-9-103(3), MCA. We hold that the sentence imposed does not constitute an excessive sanction in violation of the defendant's rights under the Eighth Amendment to the United States Constitution and Art. II, § 22 of the Montana Constitution.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

21

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that accomplice testimony regarding past crimes, wrongs, or acts of the defendant, other than those charged, need not be corroborated before it is admissible. I conclude, based upon established precedent and logic, that it does need to be corroborated; and since such testimony was admitted in this case without corroboration, I would reverse the conviction of the defendant. For that reason, I would not reach the merits of the other issues raised by the defendant on appeal.

In *Huddleston v. United States* (1988), 485 U.S. 681, 99 L.Ed.2d 771, 108 S.Ct. 1496, in discussing the circumstances under which evidence of other acts could be admitted under Fed.R.Evid. 404(b), the United States Supreme Court stated that:

> We conclude that such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.

*Huddleston*, 485 U.S. at 685, 99 L.Ed.2d at 779-80, 108 S.Ct. at 1499.

Under Montana law, the testimony of a co-conspirator, unsupported by independent corroborating evidence, is not sufficient to convict a defendant of the criminal act with which he is charged. The reasons are obvious.

Testimony of co-conspirators is among the most unreliable forms of evidence available. Co-conspirators to a criminal act are, by definition, dishonest people to begin with. Added to their presumed character weaknesses there are invariably inducements for

22

their testimony, such as lenient or favorable treatment from the State for their own criminal conduct.

For example, in this case all three of the co-conspirators who testified that the defendant engaged in prior criminal acts had been caught selling drugs and bargained with the State of Montana for lenient treatment in exchange for their testimony against the defendant. Smith was charged with the same crime for which the defendant was convicted. The defendant was sentenced to 20 years in prison with five years suspended and required to serve a minimum of five years without parole. Smith was sentenced to five years in prison with all five years suspended.

Dale Davidson was also charged with possession of drugs with intent to sell, but was promised that in exchange for his testimony the government would recommend a maximum sentence of 18 months, as opposed to the five years to which he would be exposed without favorable testimony.

Jarl Garber was promised that in exchange for his testimony he would be charged with only one attempt to sell cocaine, rather than three. At the time of defendant's trial, that charge had still not been filed. He gave the following testimony:

Q. And what did they say they would do for you?

A. Drop two counts of my sales.

Q. Sale of cocaine?

A. Correct.

Q. Are you generally aware of the penalty for possession of cocaine?

A.    I am.

. . . .

Q.    It's a big one?

A.    Yes, it is.

Q.    Have you been charged?

A.    No, I have not.

. . . .

Q.    So they got ya.  They got you right where they want
      you?

A.    (Nods head.)

If an attorney practicing civil law in the State of Montana went to the lengths that the State regularly goes to in order to induce testimony from co-conspirators he would be subject to disciplinary proceedings for violation of Rule 3.4 of Montana's Rules of Professional Conduct.  Yet, such conduct is freely permitted in the prosecution of criminal cases when inducing testimony of witnesses as disreputable as those who testified against the defendant in this case.

The majority seeks to distinguish testimony of co-conspirators when used simply to prove uncharged prior crimes from testimony of co-conspirators which is offered to prove the crime that has been charged.  However, the distinction is one of form rather than substance.  The fact is that the evidence of prior crimes was offered in an effort to convict the defendant of the crime charged, even though we have a stated public policy in § 46-16-213, MCA, that such evidence is unreliable without corroboration.

24

The majority has offered no authority for permitting uncorroborated testimony of an accomplice to prove prior crimes, when by statute, such testimony could not have been offered to prove the crime charged. However, there is prior authority for excluding this evidence.

Texas has a statute similar to § 46-16-213, MCA. Article 38.14, Tex. Code Crim. Proc. Ann., dealing with Testimony of Accomplice, states:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

The Texas Court of Appeals, in *Bustamante v. State* (Tex.Ct.App. 1982), 653 S.W.2d 846, 849, *rev. dismissed* 702 S.W.2d 193 (Tex. Crim. App. 1985), concluded that based on that state's similar statute the trial court erred when it admitted extraneous offenses based solely upon uncorroborated testimony of an accomplice. The court in *Bustamante* relied upon the 1931 case of *Wells v. State* (1931), 118 Tex. Crim. 355, 42 S.W.2d 607, which "held that it was necessary to corroborate evidence of extraneous offenses in reversing a conviction for possession of liquor for purposes of sale." *Bustamante*, 653 S.W.2d at 848-49. Furthermore, the court in *Bustamante* stated:

> We conclude that the intent of the legislature in enacting Sec. 38.14 Tex. Code Crim. Pro. Ann. was to make its terms applicable to extraneous offenses as well as to primary offenses. Therefore, in the case before us it was error to admit this uncorroborated evidence of

25

extraneous offenses and, having admitted it, to refuse to give the jury a proper limiting charge.

*Bustamante*, 653 S.W.2d at 849.

It makes no sense to establish by statute a public policy to the effect that people of Montana cannot be convicted of a criminal charge based on the uncorroborated testimony of an alleged co-conspirator, but then allow the State to circumvent that public policy by convicting people with uncorroborated testimony of co-conspirators regarding acts that are not even the subject of the State's charges. Either the testimony is unreliable or it is not. It cannot be unreliable if offered to directly convict the defendant, and reliable if offered to indirectly convict the defendant.

For these reasons I would reverse the judgment against the defendant and remand this case to the District Court for retrial. During retrial I would require that the testimony of the people who claim to have been partners in the defendant's sale of drugs either be corroborated or excluded.

_____
Justice

I concur with the foregoing dissent of Justice Trieweiler.

_____
Justice

26