No.  91-170

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA

       Plaintiff and Respondent,

-v-

JIMMY RAY BROMGARD.

       Defendant and Appellant

FILED

NOV - 2 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Thirteenth Judicial District,
                   In and for the County of Yellowstone,
                   The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

            William  F.  Hooks,  Appellate  Defender,  Helena,
            Montana

       For Respondent:

            Hon. Joseph P. Mazurek, Attorney General, George M.
            Schunk, Assistant Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney, David
            W. Hoefer, Deputy County Attorney, Billings, Montana


                   Submitted on Briefs:  August 26, 1993

                          Decided: November 2, 1993

Filed:

                           Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Jimmy Ray Bromgard (Bromgard) appeals from a judgment of the Thirteenth Judicial District, Yellowstone County. In November 1987, a jury convicted Bromgard of three counts of sexual intercourse without consent. Bromgard was sentenced to three forty-year terms of imprisonment in the Montana State Prison to be served concurrently and was designated a dangerous offender.

This Court dismissed Bromgard's initial appeal on August 30, 1988 for failure to file an appellant's brief or <u>Anders</u> memorandum. On March 29, 1991, Bromgard filed a petition for post-conviction relief. This Court denied relief on six of the seven claims alleged: we granted relief on Bromgard's claim of ineffective assistance of counsel by virtue of his counsel's failure to properly appeal the convictions. The state Appellate Defender was appointed as counsel by this Court. We granted the Appellate Defender's motion to file an out-of-time appeal.

The question presented for our review is whether the District Court erred in denying defendant's motion for a directed verdict of acquittal at the close of the defendant's case-in-chief. We affirm.

In the early morning hours of March 20, 1987, an intruder entered the home of a Billings family through a bathroom window. In addition to burglarizing the home, the intruder raped an eight-year-old girl while the rest of the family slept.

The assault took place between the hours of 4:00 and 5:00 a.m. The intruder awakened the victim, threatened her and gagged her

mouth with clothing, and then committed acts of oral, vaginal and anal intercourse. He then put a pillow over her head and left.

After the man left, the victim woke her father. Her father woke the victim's mother so that he could look around the house. He noticed a bathroom window propped open with a stick and immediately notified the police. The victim was taken to a physician who confirmed that she had been vaginally and anally raped.

The victim had been able to see her assailant quite clearly as a hallway light had been left on during the night. A police artist made a composite sketch of the assailant from the description the victim gave to him. Another officer looked at the sketch and mentioned that he thought the sketch looked like Bromgard. The sketch was shown to a neighbor of Bromgard's who also said the man in the sketch was Bromgard. Police also found a stolen checkbook belonging to the victim's mother near Bromgard's home.

The Billings police then conducted a lineup of six people, including Bromgard. The victim identified Bromgard from the lineup and also identified Bromgard at trial as the man she had picked out of the lineup.

Bromgard agreed to submit head and pubic hair samples. These samples were sent to the State Crime Laboratory and were found to be indistinguishable from certain samples recovered from the victim's bedding. Bromgard was arrested, charged and tried on three counts of sexual intercourse without consent. The District Court denied Bromgard's counsel's motion for a directed verdict of

acquittal at the close of Bromgard's case-in-chief.  The jury found Bromgard guilty of all three counts.

**Did the District Court err in denying Bromgard's motion for a directed verdict of acquittal at the close of the evidence?**

Defense counsel moved the court to direct a verdict of acquittal on the ground that the evidence was conjectural and insufficient to prove Bromgard's guilt beyond a reasonable doubt. The motion was denied.  The decision to direct a verdict in favor of a defendant lies within the discretion of the trial court and will not be disturbed absent an abuse of that discretion.  State v. Haskins (1992), 255 Mont. 202, 210, 841 P.2d 542, 547.  A directed verdict of acquittal is appropriate only when there is no evidence to support a guilty verdict.  <u>Haskins</u>, 841 P.2d at 547.

> [T]he defendant is entitled to an acquittal if reasonable men could not conclude from the evidence taken in a light most favorable to the prosecution that guilt has been proved beyond a reasonable doubt.

State v. White Water (1981), 194 Mont. 85, 87-88, 634 P.2d 636, 638.

Bromgard contends that the evidence offered by the State fell into three categories, none of which supports the conviction.  We will address each category separately.

**a.  The hair sample comparison.**

The State Crime Lab compared hair samples found in the victim's bedding with hair samples taken from the victim's head and with Bromgard's head and pubic hair samples.  Forensic scientist Arnold Melnikoff of the State Crime Lab testified that both head hair and pubic hair taken from the victim's bedding were

4

microscopically comparable to the samples provided by Bromgard.

Unlike fingerprint comparison, hair comparison does not produce absolute identification. Melnikoff testified that in his experience the odds were one in one hundred that two people would have head hair **or** pubic hair so similar that they could not be distinguished by microscopic comparison and the odds of **both** head and pubic hair from two people being indistinguishable would be about one in ten thousand.

Other courts have held that hair analysis evidence such as that provided in this case is insufficient by itself to positively identify a person. <u>See</u>, <u>e.g.</u>, State v. Faircloth (N.C. App. 1990), **394** S.E.2d **198.** Bromgard contends that the evidence of hair comparison by itself is insufficient as a means of identification; thus, he claims that because other evidence is insufficient, the hair comparison testimony is relevant but not conclusive. Bromgard also cites <u>Faircloth</u> for the premise that comparative hair microscopy serves to exclude persons and is conclusive only to negative identity. <u>Faircloth</u>, **394** S.E.2d at **202.** We need not rule on whether such evidence is sufficient by itself for identification purposes as it does not rule out Bromgard as the perpetrator of the assault in this case.

**b.    The identification made by the victim.**

Bromgard contends that the identification made by the victim is insufficient for several reasons. First, Bromgard contends that only the victim saw her assailant and the light was limited because it came from a 100-watt light in the hallway; therefore, she could

not have seen him clearly. Next, Bromgard contends that the lineup was suggestive and that the victim's identification at the lineup was less than positive. Finally, he contends that the victim became less sure as time passed that she had identified the right person.

We find none of these arguments compelling. The jury is in the best position to judge the credibility of the victim and her identification of her assailant. In this case, she saw him clearly enough to give the police a description from which police were able to create a composite sketch of her assailant, which led to further investigation of Bromgard. She identified Bromgard from a live lineup which did not prejudice Bromgard. Any inconsistencies, indecision or flaws in the victim's testimony more properly go to the weight to be given by the jury to the victim's testimony. This is a matter which is within the province of the jury.

### c.   Lack of other physical evidence.

Bromgard next contends that there was no physical evidence other than the hair comparison evidence and a composite sketch to link him to the offense. Specifically, he claims that the checkbook belonging to the victim's mother which was found near his home is not relevant because there was no discernible pattern or route established by the State between the victim's home and Bromgard's residence. He further contends that there was no fingerprint evidence or other forensic evidence from the blood stains found on the victim's bedding from which to link Bromgard to the crime.

The State has no obligation to provide this sort of physical proof to prevent a directed verdict of acquittal from being entered in favor of the defendant. A conviction may be based on circumstantial evidence alone. State v. Atlas (1986), 224 Mont. 92, 95, 728 P.2d 421, 423. When circumstantial evidence is susceptible of two interpretations, one supporting guilt and the other supporting innocence, the trier of fact determines which is most reasonable. State v. Tome (1987), 228 Mont. 398, 401, 742 P.2d 479, 481.

The State introduced other evidence in addition to the hair microscopy analysis, the description and identification made by the victim and the placement of the checkbook in the location of Bromgard's home. This consisted of further testimony inculpating Bromgard. Friends testified that on the date of the incident, Bromgard probably arrived home between 3:00 and 4:00 a.m. from an evening of drinking and cruising town. The victim's home was within walking distance of Bromgard's home and the assault took place shortly before 4:45 a.m. This testimony tends to establish the opportunity Bromgard had to commit the assault. We conclude that there was sufficient evidence to submit the question of Bromgard's guilt to the jury.

We hold the District Court did not err in denying Bromgard's motion for a directed verdict of acquittal at the close of his case-in-chief.

AFFIRMED.

_____
Justice

7

We Concur:

_____
Chief Justice

_____

_____

_____
Justices