No. 97-671

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 322

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DONNA JUNE ENRIGHT,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Judith Basin,

The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jon A. Oldenburg, Attorney at Law; Lewistown, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Joseph E. Thaggard and

Elizabeth Horsman, Assistant Attorneys General; Helena, Montana

Submitted on Briefs: December 3, 1998

Decided: December 23, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1. The defendant, Donna June Enright, was charged by information in the District Court for the Tenth Judicial District in Judith Basin County with felony arson and deliberate homicide. The State filed a notice of intent to introduce evidence of other crimes, wrongs, or acts, and Enright filed a motion in limine to exclude the evidence of other crimes, wrongs, or acts. The District Court granted in part and denied in part the motion in limine. After a five-day jury trial, Enright was convicted of felony arson and deliberate homicide. Enright appeals from her conviction. We vacate the judgment of the District Court and remand this case to the District Court for further proceedings consistent with this opinion.

¶2. Enright presents two issues on appeal:

¶3. 1. Did the District Court abuse its discretion when it denied in part Enright's motion in limine and admitted evidence of the 1995 fire during her trial?

¶4. 2. Was there sufficient evidence to support the jury's verdict?

## FACTUAL BACKGROUND

¶5. Faye Theis and Leonard Theis were married in 1961. The couple had no children together, but Faye had children from a previous marriage, including Margaret Distad, Donna June Enright, and Roy Link.

¶6. In 1988, Faye and Leonard purchased and moved into a trailer in Great Falls. Faye and Leonard eventually began to suffer from the effects of dementia and Alzheimer's disease and, in approximately November 1993, Distad and Link acquired a power of attorney on Faye's behalf, as did Enright and Link on Leonard's behalf. Faye and Leonard entered a Great Falls nursing home in November 1993. Shortly thereafter, however, Leonard left the nursing home and returned to the trailer. Enright then became his guardian. Faye remained in the nursing home.

¶7. In February 1995, Link exercised his power of attorney to transfer Faye's interest in the trailer to John Kozlowitz. Enright also transferred Leonard's interest to

Kozlowitz. A week after Kozlowitz became the owner of the trailer, the home burned and he was paid the insurance proceeds. The Great Falls Fire Department conducted an investigation of the fire, but did not determine the cause of the fire and found no evidence of foul play. The adjuster for the insurer of the trailer saw nothing unusual about the circumstances of the fire and, after interviewing the fire department's investigator, saw no need to conduct an independent investigation of the cause.

¶8. A few months later, Enright, Kozlowitz, Leonard, and Tom Martin, Enright's son, formed the Sundown Inn, Inc. corporation for the purpose of purchasing and operating a bar and restaurant in Stanford. Enright, Leonard, and Kozlowitz all then moved from Great Falls to Stanford, where they purchased three trailer lots. Kozlowitz owned the two trailers that they kept on the lots, and he lived in one, while Enright and Leonard lived in the other trailer. Financial difficulties eventually led the group to abandon their operation of the Sundown Inn in April 1996. It appears that Enright and Leonard continued to live in Stanford, although they spent considerable time at Enright's home in Great Falls.

¶9. In July 1996, Enright applied for and eventually received on behalf of Leonard a lump sum distribution of Leonard's remaining pension benefits worth approximately $38,000. Between July and October, six different insurance policies were purchased to insure Leonard's life; Enright and Kozlowitz paid some of the premiums. Testimony at trial suggested that Enright had actually prepared the applications and forged Leonard's signature. The policies named Martin, Enright, and Link as beneficiaries. In September 1996, Enright and Leonard moved back to Great Falls, after which Enright and Link made frequent trips to Stanford where they removed furniture from the Stanford trailer and transferred it to their residence in Great Falls.

¶10. On October 16, 1996, Enright and Leonard drove to Stanford from Great Falls in order to do their laundry at the Stanford trailer; they had no laundry facilities in Great Falls. After they had lunch at a cafe and went to a bar, Enright and Leonard were met by Link and his wife, who had come to Stanford to pick up one of Leonard's chairs from the trailer. Link and his wife were at the bar only a short while before they went to get the chair, but Enright and Leonard remained at the bar until approximately 8:30 p.m. Over the course of the evening, Enright accrued approximately $1200 in gambling losses.

¶11. Enright and Leonard returned to the trailer. Enright did the laundry and Leonard watched television. Leonard was developing a cold, so in addition to turning up the furnace in the trailer and covering a number of the vents to channel the heat toward Leonard's part of the trailer, Enright gave Leonard some cold medicine. Earlier in the day, Link had also allegedly given Leonard Tylenol with codeine. According to Enright, Leonard went to bed in his room of the trailer at approximately 11:30 p.m. and she did not fall asleep until approximately 2:30 a.m.

¶12. Enright contends that she awoke shortly after she fell asleep to the sound of a smoke alarm. She opened her bedroom door, but was confronted with smoke from the hallway and shut the door. She then jumped out of her bedroom window to escape the trailer. Enright tried to enter the trailer through its back door, but was unable to do so when confronted by flames. She ran next door to Kozlowitz's trailer and called 911 at 3:40 a.m. She and Kozlowitz then tried to enter the burning trailer through the front door, but retreated because it was too dark.

¶13. When officials arrived to fight the fire, Enright told them that Leonard was still inside the trailer in his bedroom; however, fire officials eventually found Leonard's body partially covered by a blanket on the living room couch, where he had apparently been asleep. An autopsy revealed that Leonard died of carbon monoxide poisoning from smoke inhalation. It further revealed the presence of therapeutic doses of potentially sedative drugs, such as Benadryl and codeine.

¶14. A few days later, agent Joe Uribe from the Criminal Investigation Bureau of the Montana Department of Justice was contacted by the Judith Basin County Sheriff to investigate Leonard's death. During a search of the trailer, Uribe and other officers seized an empty bottle of sedative drugs, and a battery-operated smoke alarm that they found in the hallway; they could not, however, find a battery for the alarm. Uribe interviewed Enright on November 6, 1996. He testified that she told him, among other things, that she was unaware of any life insurance policies for Leonard. Uribe also testified that during the interview Enright made a number of other statements that appeared inconsistent with her earlier statements regarding the fire. The next day he searched her home in Great Falls, where he found the six life insurance policies, a number of bills issued to Enright, Kozlowitz, Link, Martin, and Leonard, and several items of property which Enright had told her insurer had been destroyed in the fire.

¶15. Six experts investigated the fire and testified at trial. They consistently testified that the fire started in a third bedroom that served as a storage room. Several witnesses testified that the cause of the fire was a collection of newspapers that was stored in a corner of the room. They all agreed that no accelerants were used to start the fire, and that there was no evidence of any deliberate act to start the fire. Based largely on their inability to attribute the fire to any accidental cause, several experts opined that the cause of the fire was incendiary, as opposed to natural or undetermined.

¶16. On November 13, 1996, Enright was charged by information in the District Court for the Tenth Judicial District in Judith Basin County with felony arson and deliberate homicide; the information was later amended to include an alternate charge of deliberate homicide pursuant to the felony murder rule at § 45-5-102(1)(b), MCA. Link and Kozlowitz were also charged a few months later based on their alleged roles in the fire and Leonard's death.

¶17. On April 14, 1997, the State filed its notice of intent to introduce evidence of other crimes, wrongs, or acts by Enright. In order to prove motive, common scheme, and a nonaccidental cause of this fire, the State sought to introduce evidence that on seven previous occasions Enright had been involved in home or automobile fires for the purpose of making fraudulent insurance claims. Enright filed a motion in limine to exclude, among other things, all evidence of previous fires and insurance claims. After a hearing, the District Court granted in part and denied in part Enright's motion. It held that all of the previous fires and the respective insurance claims were too remote in time and/or too dissimilar factually to be admitted, with the exception of the 1995 Great Falls trailer fire. The court held that evidence of the 1995 fire could be admitted.

¶18. A five-day jury trial was conducted from June 16-20, 1997. During the trial, the District Court permitted the State's witnesses to testify regarding the 1995 fire and the insurance claims made as a result of it. The jury convicted Enright of arson and deliberate homicide, and she was ordered by the District Court to serve a seventy-five-year sentence.

## ISSUE 1

¶19. Did the District Court abuse its discretion when it denied in part Enright's

motion in limine and admitted evidence of the 1995 fire during her trial?

¶20. We review a district court's evidentiary rulings to determine whether the district court abused its discretion. *See State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263.

¶21. The State has alleged at trial and on appeal that due to gambling and business losses, Enright was in need of money, and that in order to obtain funds, she fraudulently insured Leonard's life, sedated him, and then intentionally burned the trailer with him in it to collect life insurance proceeds from his death. In an effort to prove that the trailer fire was intentionally started and that Enright's actions in that regard were part of a common scheme, the State sought to introduce evidence of previous fires and of the insurance proceeds that were paid to Enright or other individuals close to her after those fires. Throughout its attempts to introduce evidence surrounding the previous fires, the State referred to the fires as other crimes, wrongs, or acts evidence, and asserted that the evidence was admissible pursuant to the modified *Just* rule. *See generally State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52.

¶22. Enright contends that because there was no evidence which connected her to the 1995 fire, it should have been excluded pursuant to our decisions in *State v. Johnson* (1991), 250 Mont. 496, 821 P.2d 1039, and *Britton v. Farmers Insurance Group* (1986), 221 Mont. 67, 721 P.2d 303.

¶23. The State contends that pursuant to our decision in *State v. Paulson* (1991), 250 Mont. 32, 817 P.2d 1137, there is no threshold requirement regarding the quantum of proof necessary before evidence of other crimes, wrongs, or acts is admissible, and that the only appropriate analysis is pursuant to Rule 404(b), M.R.Evid., and *Matt*, 249 Mont. 136, 814 P.2d 52.

¶24. We conclude, however, that the four-part analysis for the admissibility of other crimes, wrongs, or acts assumes that there is evidence of a prior crime, wrong, or act, and without such evidence, there is nothing to analyze. *Paulson* is not on point because in that case, other drug dealers testified to the defendant's importation and distribution of drugs prior to the distribution for which he was being tried. The question in *Paulson* was not whether there was evidence of a prior criminal act by the defendant, but what quantum of proof would be required before that evidence

could be admitted.

¶25. The facts in *Johnson* and *Britton* are more analogous to the facts in this case. In *Britton*, Bill Britton filed a claim with his insurer, Farmers Insurance Group, after fire damaged one of the buildings on his property. Farmers denied coverage, and in response to Britton's claim for bad faith, alleged that he had intentionally caused the fire. From a verdict in Britton's favor, Farmers appealed and alleged that the district court erred when it refused evidence that Britton had recovered insurance proceeds from three previous fires which occurred on his property. The evidence was offered by Farmers to demonstrate a common scheme or motive. Without the need for any "other acts" analysis, we affirmed the district court's exclusion of the prior fires with the following explanation:

In like manner, we find no error in the denial by the District Court of evidence or testimony relating to prior fires on which Britton may have received insurance proceeds. . . . The proffered evidence did not meet the test of relevancy, in that it did not make probable that Britton had committed arson either from the viewpoint of motive, intent or deed itself. *Rhodes v. Weigand* (1965), 145 Mont. 542, 402 P.2d 588. Unless evidence naturally and logically tends to establish a fact in issue, it is not admissible. *Brion v. Brown* (1959), 135 Mont. 356, 340 P.2d 539. See *McConnell-Cherewick v. Cherewick* (1983), 205 Mont. 75, 666 P.2d 742.

*Britton*, 221 Mont. at 86, 721 P.2d at 315.

¶26. Although not discussed in our rationale for excluding the prior fires, it is apparent from our discussion of those fires that they were properly excluded because of a failure to offer any evidence that they were caused by Britton's wrongdoing.

¶27. *Johnson*, decided subsequent to *Paulson*, involved facts much more similar to those in this case, and found no need to apply the four-part analysis from *Matt* to nearly identical circumstances. In *Johnson*, the defendants were charged with arson and, in the alternative, criminal mischief based on a fire that destroyed a mobile home. Pursuant to notice of an intent to rely on other crimes evidence, the State was allowed to offer evidence of six prior fires which had occurred on premises owned or occupied by one or both of the defendants. Following a three-day jury trial, the district court directed a verdict in favor of the defendants, dismissing the arson

charges, but they were convicted by the jury of criminal mischief. Based on the district court's admission of the prior fires, however, this Court reversed those convictions on appeal for the following reasons relevant to the issue in this case:

We hold that the admittance of these prior fires unfairly prejudiced the Defendants, as no evidence exists that links Defendants with intentionally causing these prior fires. Therefore, these prior fires cannot be considered other crimes, wrongs or acts under Montana Rules of Evidence 403 and 404(b). We reverse and remand this case; in the event of a new trial, the District Court is to omit these prior fires as other crimes, wrongs or acts evidence.

*Johnson*, 250 Mont. at 499, 821 P.2d at 1041.

**¶28. Likewise, in this case, we conclude that an analysis pursuant to Rule 404(b), M. R.Evid., of "other crimes, wrongs, or acts" evidence assumes that there is evidence of a prior wrongful act. In this case, there was none. Scott Enloe, the claims adjuster for the insurer of the trailer at the time of the 1995 fire, discussed the fire with the investigator for the Great Falls Fire Department. He learned from that investigator that there was no evidence of foul play, and from his investigation found nothing unusual about the fire. No additional evidence was offered at this trial to suggest that Enright was connected to the cause of the 1995 fire. Therefore, there was insufficient foundation to offer evidence of the prior fire as a prior crime, wrongful act, or act of Enright, and there is no basis for analyzing the simple occurrence of a prior fire pursuant to the rule related to evidence of prior acts.**

**¶29. The State contends on appeal that *Johnson* and *Britton* do not control, since it contends that in neither of those cases was there evidence that the parties intentionally caused the previous fires. Implicit in its argument is that such evidence exists in this case. However, it is uncontroverted that the local authorities and the insurer made no allegations that the previous fire was intentionally caused, and no new evidence to that effect was offered.**

**¶30. The State would have the jury infer that something criminal was done in 1995 based on the facts in this case, and then use that inference to bootstrap guilt of the crimes charged. Such circular reasoning has little probative value and creates a high risk that a jury would convict based on unsupported assumptions.**

¶31. In other words, there is no evidence of an admissible common scheme. Evidence of the 1995 fire was, therefore, not relevant to the issue of whether Enright committed the acts with which she was charged, and it should have been excluded. As the District Court stated in its order regarding evidence which it did exclude prior to trial, "[t]he State's burden is to prove the specific crimes charged herein with proper evidence related to this incident." (Emphasis added.) Accordingly, we hold that the District Court abused its discretion when it allowed evidence of the 1995 fire.

## ISSUE 2

¶32. Was there sufficient evidence to support the jury's verdict?

¶33. We review the sufficiency of the evidence to support a jury verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See State v. Licht* (1994), 266 Mont. 123, 131, 879 P.2d 670, 675; *see also State v. Mergenthaler* (1994), 263 Mont. 198, 203, 868 P.2d 560, 562.

¶34. The State's information charged Enright with arson pursuant to § 45-6-103(1), MCA, and with deliberate homicide pursuant to § 45-5-102(1)(a), MCA. The statutes require the State to prove beyond a reasonable doubt that Enright purposely or knowingly committed the respective acts of destroying the trailer by fire and causing Leonard's death. Enright contends that the State failed to prove that she acted purposely or knowingly, and that the expert testimony failed to establish an intentional cause of the fire.

¶35. However, circumstantial evidence can be sufficient to prove criminal intent, as well as to sustain a conviction. *See State v. Bromgard* (1993), 261 Mont. 291, 295, 862 P.2d 1140, 1142; *State v. Brogan* (1993), 261 Mont. 79, 89, 862 P.2d 19, 25-26; *State v. Buckingham* (1989), 240 Mont. 252, 260, 783 P.2d 1331, 1337; *see also* § 45-2-103(3), MCA ("The existence of a mental state may be inferred from the acts of the accused and the facts and circumstances connected with the offense."). We conclude that in this case, after excluding evidence of the 1995 fire, there was still sufficient evidence to support submission of the State's charges to the jury. Enright purchased six insurance policies which insured Leonard's life during the three months prior to his death, and then denied their existence; Enright and her family and friends moved furniture out of the trailer prior to the fire and then claimed its loss to the insurance

company; Leonard's body revealed the presence of multiple sedative drugs; a battery could not be found for the smoke alarm located nearest Enright's bedroom, and the only other smoke alarm in the trailer was located inside a closed kitchen cabinet at the completely opposite end of the trailer; there were no signs of the clean laundry which Enright claimed to have left in the living room; and the fire officials testified that despite Enright's supposedly multiple encounters with and in the burning trailer, they did not smell smoke on her. Finally, there was expert opinion evidence that the fire was intentionally started.

¶36. While we recognize that Enright's version of the events suggests, at least in part, a benign explanation for this evidence, the role of fact-finding belongs to the jury. "When circumstantial evidence is susceptible of two interpretations, one supporting guilt and the other supporting innocence, the trier of fact determines which is most reasonable." *Bromgard*, 261 Mont. at 295, 862 P.2d at 1142. Accordingly, we conclude that the evidence in this case was sufficient to establish the essential elements of the alleged crimes beyond a reasonable doubt.

¶37. Therefore, Enright is not entitled to have the charges against her dismissed. However, based on our conclusion that evidence of the 1995 fire was erroneously admitted, and further conclusion that that evidence was prejudicial to the defendant, we vacate the judgment of the District Court and remand to the District Court for a new trial.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

No

/S/ W. WILLIAM LEAPHART