No. 01-580

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 62N

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

ARYAN BRANCAMP,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

            Gordon H. Williams, Attorney at Law, Bozeman, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Micheal S. Wellenstein,
            Assistant Attorney General; Helena, Montana

            Marty Lambert, County Attorney; Gary Balaz, Deputy County Attorney,
            Bozeman, Montana

Submitted on Briefs:  February 14, 2002

Decided:  April 2, 2002

Filed:

_____
                   Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 On August 10, 2000, the State charged Aryan Brancamp (Brancamp) by information in the Eighteenth Judicial District Court, Gallatin County, with theft, by a common scheme, a felony, in violation of § 45-6-301(1)(a), MCA. On February 28, 2001, the District Court issued its findings of fact, conclusion of law, and verdict, finding Brancamp guilty of felony theft either directly or by accountability. We affirm the judgment of the District Court.

¶3 The sole issue on appeal is whether there was sufficient evidence before the District Court to convict Brancamp of felony theft by common scheme.

FACTUAL AND PROCEDURAL BACKGROUND

¶4 On seven different occasions between March 20, 1999, and April 2, 1999, Brancamp and her mother Beverly Ervin (Ervin) entered Bozeman area stores and allegedly stole money. The pattern of their alleged crimes were similar in each instance. Brancamp, the younger, pregnant woman, would occupy or distract the store owner or manager while Ervin, the older woman, would take possession of the money.

2

¶5 On March 20, 1999, Deborah Moro (Moro), the owner of the Antique Market, discovered that her bank deposit envelope containing checks and cash had been stolen from her office desk drawer. Then, on April 1, 1999, an older woman and a younger, pregnant woman entered the store. Moro saw the older woman reaching for the office door. When the woman saw Moro looking at her, she changed her motion and picked up a plate. After the two women left, Moro discovered her bank bag containing checks and cash was missing. Moro later recalled that the same two women were in her store on March 20, 1999, when money had also been stolen. The two women were the only customers who had been in the store on both occasions when the money was stolen, and, further, those were the only two times money had been stolen from the Antique Market. Moro identified Brancamp from a photographic lineup as the younger, pregnant woman who was in her store on the two days money was stolen.

¶6 On March 28, 1999, Mary Lou Freese (Freese), owner of My Home Is In Montana, noticed cash, checks, and credit card slips were missing from a bank bag located in the store office. Prior to noticing the missing money, two women, one older and one younger and pregnant were in the store. The younger woman wanted to look at a doll in a case at the back of the store. While Freese was in the back of the store with the younger woman, the older woman went in a different direction, and Freese lost track of her. Immediately after the women left, Freese went into her office and discovered the missing money and called 911. Freese identified Brancamp as the younger woman who was in her store just before she discovered the missing money.

3

¶7 On March 29, 1999, Emily Budziak, owner of the Tibetan Trader, was preparing the deposit when a young, pregnant woman and an older woman entered her store. Budziak placed the cash deposit bag under the counter and began helping the two women. Budziak testified that the younger woman tried on a lot of clothes and asked for help in finding clothes. Upon reentering the store after checking a sales rack located on the outside porch, Budziak saw the older woman pulling back from the store counter where Budziak had been preparing the deposit. After the women left, Budziak went back to finish the deposit and discovered that the deposit bag was missing. From a photographic lineup, Budziak identified the younger woman in her store as Brancamp.

¶8 On March 30, 1999, Teresa Baumbauer, the owner of Madison House, had her purse stolen from the store. Prior to discovering her purse had been stolen, a young, pregnant woman and an older woman entered the store. The young woman immediately approached Baumbauer and began asking questions about merchandise. As Baumbauer talked with the younger woman in the front of the store, the older woman was in the back of the store. About fifteen minutes after the women left, Baumbauer discovered her purse had been stolen. Baumbauer identified Brancamp as the young, pregnant woman from a photographic lineup.

¶9 On April 1, 1999, Cinda Kleinkopf, owner of Timberline Treasures, discovered that her wallet was missing from her purse which was in the business office located at the back of the store. Earlier in the day, two women had come into the store. The young woman went to the front of the store and the older woman went towards the back.

4

Kleinkopf noticed the older woman going towards the service desk and cash register, so she followed her. The younger woman then asked her about some goods, so Kleinkopf walked to the front of the store. During this time Kleinkopf could not see the older woman. After the women left, Kleinkopf went to get some information from her wallet and discovered it was gone. Shortly after she reported the theft, Kleinkopf identified Brancamp from a photographic lineup.

10¶ On April 2, 1999, two women entered Rocky Mountain Design Interiors. Tedi Svare (Svare), the manager of the store, testified that the young, pregnant woman began questioning Svare about a leather couch in the back of the store. During this time the older woman was in the front of the store where the cash drawer was located. At the end of the day, when Svare was preparing the deposit, she discovered the cash in the drawer was missing. Svare described the two women as a "mother/daughter team," and Svare identified Brancamp as the young, pregnant women in the store from a photographic lineup. Neither Brancamp nor her mother bought anything in any of the stores where the thefts occurred.

11¶ In January 2000, Gallatin County Deputy Sheriff Jason Jarrett talked to Brancamp by telephone and informed Brancamp that she and her mother had been identified by a number of witnesses in several theft complaints. In response to Deputy Jarrett's statement, Brancamp stated that her mother had gotten her into a lot of trouble recently and she was really tired of it.

¶12 Each of the six store owners or managers were able to identify Brancamp as the young, pregnant woman in their respective stores on the day of the thefts at trial. Following the close of the State's case-in-chief, Brancamp's attorney moved to dismiss, arguing that the State failed to prove its case beyond a reasonable doubt. That motion was denied. On February 28, 2001, the District Court found Brancamp guilty of felony theft, either directly or by accountability. Brancamp now appeals from the judgment and verdict.

## DISCUSSION

¶13 Was there sufficient evidence before the District Court to support Brancamp's conviction for felony theft by common scheme?

¶14 Brancamp argues that the State's circumstantial evidence was insufficient to sustain her felony theft conviction. We review the sufficiency of the evidence to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational tier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Zeltner*, 2000 MT 319, ¶ 5, 302 Mont. 504, ¶ 5, 15 P.3d 384, ¶ 5. In addition, the credibility of the witnesses and the weight of the evidence are exclusively within the province of the trier of fact. *State v. Brogan* (1993), 261 Mont. 79, 87, 862 P.2d 19, 24. If events are capable of different interpretations, the trier of fact determines which is the most reasonable. *Brogan*, 261 Mont. at 87, 862 P.2d at 25.

6

15¶ Section 26-1-501, MCA, permits the trier of fact to make inferences based on the evidence provided. A person may be convicted on circumstantial evidence alone. *State v. Enright,* 1998 MT 322, ¶ 35, 292 Mont. 204, ¶ 35, 974 P.2d 1118, ¶ 35.

16¶ The District Court found Brancamp guilty of theft by common scheme either by direct action or by legal accountability for the actions of Ervin (the older woman) in violation of § 45-6-301(1)(a), MCA, which states:

> (1) A person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over the property of the owner and:
>
> (a) has the purpose of depriving the owner of the property.

Montana law also provides in §§ 45-2-301 and 45-2-302, MCA, that:

> A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for such conduct as provided in 45-2-302, or both.

Section 45-2-301, MCA.

> A person is legally accountable for the actions of another when:
>
> . . .
>
> (3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.

Section 45-2-302(3), MCA.

17¶ We have stated that a defendant's "act of aiding or abetting under the accountability statute need not be criminal in nature; it need only promote or facilitate commission of the crime." *State v. Lantis*, 1998 MT 172, ¶ 39, 289 Mont. 480, ¶ 39, 962

7

P.2d 1169, ¶ 39. The State's theory in the District Court and on appeal is that Brancamp is guilty of theft by accountability.

18¶ Brancamp challenges the sufficiency of evidence supporting her conviction. She contends there was insufficient evidence to prove that she was involved in the thefts, or had knowledge that her mother was stealing while they were shopping. Relying on *State v. Miller*, Brancamp argues that in order "to justify a conviction in a case based solely on circumstantial evidence, the facts and circumstances must not only be entirely consistent with the theory of guilt, but must be inconsistent with any other rational (reasonable) conclusion." *State v. Miller* (1988), 231 Mont. 497, 512, 757 P.2d 1275, 1284. Brancamp asserts that many other explanations abound for why Brancamp and Ervin were in those stores; particularly, that they were simply shopping. According to Brancamp, it is not unusual for mothers and daughters to go shopping together, nor is it suspicious for people shopping not to buy anything.

19¶ The State argues that the circumstantial evidence in the case is inconsistent with Brancamp's claim that she and Ervin were simply a daughter and mother shopping in six stores that happened to suffer thefts around the time they were shopping. Rather, the circumstantial evidence is consistent with a finding that Brancamp was engaged in a scheme to help her mother steal.

20¶ The State asserts that to adopt Brancamp's shopping explanation as reasonable or rational, the trier of fact "would have had to conclude that it was merely happenstance or coincidence that seven thefts occurred at approximately the same time Brancamp was

8

shopping with her mother in six different stores." Further, the State argues that the discovery of the thefts shortly after Brancamp left each store is a powerful circumstance pointing to her guilt, and refutes her claim that she was simply shopping and did not know that her mother was stealing. Finally, the State offers that the evidence demonstrates Brancamp's specific role in each theft was to keep the store owner or manager distracted while her mother slipped from sight and stole the money.

21¶ As stated above the District Court as the trier of fact was free to make inferences based on the evidence provided and if events are capable of different interpretations, it is the job of the trier of fact to determine which interpretation is the most reasonable. The District Court concluded that:

> There is only one rational explanation for the conduct of the Defendant and the older woman who was with her on seven occasions in six stores. They were together to steal money. Any attempt to explain the disappearance of the money, purse and wallet in any other way would be preposterous.

22¶ The District Court's conclusion is based on reasonable inferences from the facts in evidence. For the above reasons, we determine that a rational trier of fact could clearly infer from the facts and circumstances that Brancamp had knowledge of the thefts and was acting with Ervin in a common purpose to commit the thefts. We conclude that there was sufficient evidence to support Brancamp's conviction for violation of § 45-6-301(1)(a), MCA. Therefore the judgment of the District Court is affirmed.

/S/ JIM RICE

We concur:

9

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART